### PRESSLEY KINSEY v. H. SASSE.

#### No. 152.

**1. Pre-emption—Return of Field Notes.—**Although the field notes of the survey made under a pre-emption were not returned to the Land Office within twelve months after date of the survey, as required by law (Revised Statutes, article 3948), still when returned before any adverse right attached, the pre-emption right will not be forfeited, and is superior to any claim arising subsequent to the return of the field notes.

**2. Same—Cases Adhered to.—**Gammage v. Powell, 61 Texas, 629; and McCarthy v. Gomez, 85 Texas, 10, adhered to.

**3. Pre-emptor may Sell before His Right is Matured.—**In Palmer v. Bennett, 81 Texas, 451, it is held, that one who has pre-empted land may sell it prior to the completion of the occupancy for three years, and if the possession be kept up by the vendees, the patent issues in the original right, and the land does not become vacant. This is adhered to.

**4. Pre-emption Right may be Sold—Vendor's Lien.—**The pre-emption right may be sold, and the foreclosure of a vendor's lien thereon passes title to the pre-emption, so far as the rights of the parties extend.

APPEAL from Coryell.    Tried below before Hon. C. K. BELL.

*McDowell & Miller*, for appellant.—When the claimant of a homestead donation fails to have the field notes of his survey returned to and filed in the General Land Office within twelve months after the date of his application, he forfeits all right and title to the land filed on, and the same becomes subject to entry or location, as other vacant and unappropriated public domain. Rev. Stats., art. 3948; White v. Holliday, 20 Texas, 679.

No brief for appellee has reached the Reporter.

KEY, ASSOCIATE JUSTICE.—There is no statement of facts in this case; the conclusions of fact filed by the trial court are adopted, and are as follows:

" That J. D. Cabler was, on and prior to the 4th day of September, 1882, the head of a family, and that he then located upon the land in controversy, which was vacant and unappropriated public domain, as a homestead donation. That he lived upon the same, claiming it as a homestead donation, until about the 15th day of August, A. D. 1883, when he sold it to B. D. Trammell, and conveyed it by deed dated August 15, 1883.

" That Cabler had the land surveyed August 14, 1883, but that he did not send the field notes to the Land Office.

" That Trammell, who was also the head of a family, lived on the land until March 24, 1884, when he sold it to W. A. Hewlett, and conveyed the same by deed bearing that date, in which it was recited that the consideration was part cash and part on time, the vendor's lien being expressly retained in the deed to secure the payment of the deferred payment.

" That on the 2nd of February, 1884, Trammell sent up to, and that the field notes were filed in the General Land Office.

" I further find, that W. A. Hewlett, who was the head of a family, went into possession of, and lived upon as a homestead, the land in controversy until the time the place had been occupied by Cabler, Trammell, and him (Hewlett) exceeded three years, and that neither Cabler, Trammell, nor Hewlett during the time during which they respectively occupied said place had a homestead other than the said place.

" That Hewlett, on the 8th day of July, 1886, sent up to the Land Office the affidavit of occupancy of the homestead in controversy, signed and sworn to by himself and two credible witnesses, and stating that Hewlett and his assignees had actually settled upon and cultivated as a homestead the pre-emption for the period of three years.

" That plaintiff, H. Sasse, bought from Trammell the note given by Hewlett to secure the deferred payment on the land, and that Sasse brought suit on said note. That on January 2, 1886, a consent decree was rendered in favor of Sasse against Hewlett for the amount of the note and interest, and foreclosing lien on premises in controversy, but with a stay of order of sale until October 15, 1886.

" That under order of sale issued on said judgment on November 16, 1886, the premises in controversy were sold on the first Tuesday in December, 1886, by the sheriff of Coryell County, and were bought in by plaintiff.

" I also find, that defendant, with knowledge of the facts of the occupancy of the premises by Cabler and Trammell, and with constructive knowledge of the other facts stated, and knowing that plaintiff was claiming the land, on the 13th day of March, A. D. 1888, took possession of and filed upon the said land, claiming it for vacant land and as a homestead donation, and at once sent up and filed the field notes of the survey

in the General Land Office, and filed in the General Land Office a protest against the issuance of a patent to W. A. Hewlett, and no patent has been issued to any one for the land."

*Opinion.*—1. Although the field notes of the survey made under the pre-emption which forms the basis of appellee's title were not returned to the General Land Office within twelve months after the date of the survey, as required by law, still, as they were returned before appellant acquired any right to the land, upon the authority of Gammage v. Powell, 61 Texas, 629, and McCarthy v. Gomez, 85 Texas, 10, it must be held that the pre-emption right under which appellee claims has not been forfeited, and that it is superior to appellant's attempted pre-emption of the land. The principle upon which a similar question is decided in those cases applies with equal force in this case.

2. In Palmer v. Bennett, 81 Texas, 451, it is said: "One who has pre-empted land may sell it prior to the completion of the occupancy for three years, and if the possession be kept up by the vendee or vendees, the patent issues in the original right, and the land does not become vacant."

In that case, the appellant resisted the enforcement of a vendor's lien on the land, because when he purchased it, it was an unpatented pre-emption, and had not been occupied three years. The Supreme Court held, that a vendor's lien existed on the land to secure the payment of a note given for part of the purchase money.

In the present case, Trammell sold the land to Hewlett, and retained in the deed an express lien to secure the deferred payment of purchase money. Appellee, the legal holder of the note thus secured, sued Hewlett, and obtained a judgment on the note and a foreclosure of the lien on the land; and at a sale made under an order of sale issued on said judgment, he became the purchaser of the land.

Under these circumstances, we think the doctrine announced in Palmer v. Bennett, supra, has application, and it must be held, that the foreclosure sale vested in appellee all the rights which the three occupants, Cabler, Trammell, and Hewlett, or either of them, had in the land at the time of said sale by virtue of the Cabler pre-emption.

And according to the testimony these rights were superior to any shown to be in appellant.

This disposes of all the questions in the case; and finding no reversible error, the judgment is affirmed.

*Affirmed.*

Delivered April 26, 1893.