No. 6183.

JOHN J. STEVENS v. CHARLES GEISER ET AL.

1. PATENT—PATENTEE.—A patent regularly issued is evidence of the State parting with her title to the land, and the transfer of it to the patentee.
2. RECORD OF PATENTS—COPIES.—The record of the patent in the land office is a record from which copies are subsequently given. These copies are evidence of the original grant by the State.

Opinion of the court.

3. COPIES.—A copy certified as of the patent *as originally issued* could properly be given by the Commissioner of the Land Office, whenever demanded or necessary to the rights of parties interested.

4. INDORSEMENT UPON THE LAND OFFICE RECORD.—Such indorsement of itself will not affect the validity of the patent, unless done by competent authority.

APPEAL from Bexar. Tried below before the Hon. Geo. H. Noonan.

The opinion gives the facts

*Houston Brothers,* for appellant.

*F. G. Morris,* for appellee.

WALKER, ASSOCIATE JUSTICE. This was a suit brought by Stephens against Geiser et al. for a survey of land in Bexar county patented to Stephens, October 3, 1883.

The appellees claim, under patent to S. H. Lackie, assignee, dated April 10, 1850. Appellant contends that there was no sufficient proof of the patent to Lackie; and, further, that such patent had been canceled by decree of the United States Circuit Court and thereby the land had been restored to the public domain.

The case was tried without a jury and judgment rendered for defendants, and Stephens appeals. Appellant only relies upon his first assignment of error. The proposition and state ment under it are as follows:

"Where a party seeks to establish title to land under a grant from the State such grant must be established and proved by the production of the original patent or by a certified copy of the original patent as the same is shown to be recorded in the records of the General Land Office and it is not sufficient to produce a copy of the patent as it 'was originally recorded,' leaving the inference that it is not a copy of the patent as it now appears in the records of the General Land Office; because such patent may have been changed after it was first recorded or the records may show that it was properly canceled after it was first issued, and it is not now an existing patent entitled to credit in the courts; or even that such patent may never have been issued to the parties, and that fact may appear by a true copy of the records as they now stand.

And the fact that the words 'as the said patent was originally recorded,' being interlined and varying the usual form of certificate is sufficient in itself to discredit the copy offered."

"The usual form of certificate attached by the Commissioner of the General Land Office to certified copies of patents was changed by the interlineation of the words 'as said patent was originally recorded' in the certificate to the copy of patent offered by the appellee on the trial and admitted in evidence by the court. All these objections to the introduction of the instrument were properly made, overruled by the court and exceptions taken."

A patent, at the time it is issued, is evidence of the State parting with the title to the land and the transfer of it to the patentee. If regularly issued the patentee, from the instant of its issuance, is vested with the legal title. The record of the patent in the land office is a record from which copies are subsequently given. These copies are evidence of the original. It would seem then that a copy at any time given of the patent as it "was originally recorded" would be equivalent to a copy of the patent as when it was issued. And we know of no law or custom forbidding a party interested from obtaining such evidence from the land office whenever the protection of his rights may require it.

It does not require argument or illustration to show that the rights of the patentee in the land are protected under the law. An alteration of the land office records without his consent or without judicial sanction could not affect his rights. Clearly the land office officials are authorized to note upon the records the changes so made. But such entries of themselves have no power, they are rather historical, and are useful in leading to the facts which may affect the status of the land. The presumption is that the records are kept intact. The certificate, as offered, while unusual in form, was not irregular and the document certified to was competent testimony.

After the patent offered by the defendants had been admitted, they showed title under it; Lackie to Herndon, September 5, 1850; title bond November 18, 1850, by Herndon to Thuken, et al., whose estate defendants have for one quarter league, including the land sued for; Herndon receiving part cash and taking two notes, one due January 1, thereafter, and the other twelve months after date; Herndon binding himself to make title upon payment of the purchase money. These purchasers

at once went into possession and made valuable improvements, and have held the land ever since. December, 1851, upon receiving payment of the purchase money in full, Herndon executed the deed as required by his bond.

It appears that February 17, 1851, a suit was filed in chancery, No. 10, in United States Circuit Court, for western district of Texas, styled Howard Heirs v. Hodge et al. It is not shown when Herndon was served with subpœna or when he answered. Nor does it appear that any of his vendees of the land here in controversy were made parties.

The plaintiff, in rebuttal, offered a certified copy of the patent relied upon by the defendant, with endorsement across it, "cancelled by decree of the U. S. Circuit Court, May 7, 1874, Shelley, clk." And in connection with it was offered a certified copy of a consent decree in the suit No. 10, chancery, Howard's Heirs v. Hodge et al., of date June 22, 1874. Objections were urged to these copies, and they were excluded. This exclusion is not urged as error in the brief of appellant. This summary of the case is given to show more fully the effect of the objection to the form of certificate, to the copy of patent offered by the defendants.

From the testimony, including that offered and excluded, we do not see any error requiring the reversal of the judgment below. It is affirmed.

*Affirmed.*

Opinion delivered May 22, 1888.