### HERMANN (HERMANN HOSPITAL ESTATE) v. HIGGINS OIL & FUEL CO.* (No. 8422.)

(Court of Civil Appeals of Texas. Galveston. Feb. 28, 1924. Rehearing Denied March 27, 1924.)

1. **Abatement and revival ⚖➣71—Failure of representative to voluntarily appear and be substituted as plaintiff held not to abate action.**

Under Rev. St. arts. 1886, 1887, plaintiff's death and failure of his representative to appear voluntarily and be made plaintiff does not ipso facto cause discontinuance or abatement of suit.

2. **Limitation of actions ⚖➣105(1)—Continuance of suit on docket tolled statute.**

Where suit did not abate on plaintiff's death, its continuance on the docket prevented running of limitations against the cause of action.

3. **Action ⚖➣70—Long delay in substitution of plaintiff's representative for plaintiff may be abandonment of suit.**

Under some circumstances, long delay of those entitled to do so to appear and have themselves made parties under Rev. St. art. 1886, should be considered abandonment of the suit, notwithstanding absence of intention to abandon it.

4. **Abatement and revival ⚖➣74(4)—Failure of parties entitled to prosecute to do so may bar right.**

Under some circumstances, failure of those entitled under Rev. St. art. 1886, to prosecute a suit, to do so, within reasonable time, should charge them with laches barring their right to proceed.

⚖➣For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused March 7, 1924.

**5. Action ⊂⊃70—Facts held not to show abandonment or laches, as against trustees failing to prosecute suit after plaintiff's death.**

Where attorneys agreed, from time to time, to continue a case, and not to set the case for trial without sufficient notice to enable the other to prepare, defendant's attorney knowing that plaintiff was dead and his attorney was acting for trustees under plaintiff's will, there was no abandonment of the suit, and defendant could not invoke laches against the trustees.

**6. Abatement and revival ⊂⊃72(2)—Testamentary trustees of practically entire estate of plaintiff held entitled to substitute for plaintiff dying before verdict.**

Under Rev. St. art. 1886, authorizing plaintiff's representative to prosecute suits surviving his death, trustees appointed by executors of deceased plaintiff to administer his residuary estate as a charitable trust created by his will, though not technically executors, administrators, or heirs, were entitled to substitute themselves as plaintiffs in action by plaintiff for value of oil delivered for storage for which defendant failed to account.

**7. Abatement and revival ⊂⊃72(2)—Purpose of statute authorizing substitution of parties on death of plaintiff stated.**

The purpose of Rev. St. art. 1886, is not only to abrogate the common-law rule that plaintiff's death abates suit, but also to provide for substitution as plaintiff of any person or persons succeeding to rights of original plaintiff, whether executor, administrator, heir, or person holding the same practical relation.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by George H. Hermann against the Higgins Oil & Fuel Company, in which H. F. MacGregor and others, as trustees of the Hermann Hospital Estate, under the will of George H. Hermann, deceased, were substituted as parties plaintiff. From a judgment of dismissal, plaintiffs appeal. Reversed and remanded.

J. W. Lockett, of Houston, for appellants.
Orgain & Carroll and Minor & Minor, all of Beaumont, for appellee.

PLEASANTS, C. J.   This suit was brought by George H. Hermann against appellee to recover $4,779.45, the alleged value of 6,372.61 barrels of crude oil delivered by plaintiff to defendant for storage during the years 1907 and 1908, and for which plaintiff alleged defendant had failed to account.

The original petition was filed on July 16, 1909.   On March 26, 1910, the defendant filed its original answer, consisting of a general demurrer and general denial.

The judge's docket shows that the case was first set for trial on December 21, 1909, and was continued by agreement on April 19, 1910, and again on June 6, 1910. It was again set for trial on October 12, 1910, and reset for December 14, 1910.   On December 15, 1910, it was passed for settlement and reset for February 15, 1911.   On February 20, 1911, it was again continued by agreement. It was set for trial December 3, 1912, and again set for trial on January 2, 1913.

This was the state of the pleadings and the status of the suit on October 21, 1914, when the plaintiff, George H. Hermann, died, leaving a will which was duly probated on January 9, 1915. This will appointed T. J. Ewing, Jr., J. J. Settegast, Jr., and John S. Stewart as independent executors without bond, and trustees of his estate, and willed his estate, with a few exceptions not necessary to here mention, to said named trustees, together with four other trustees to be selected by them, in trust, to be held, managed, and operated by them as trustees for the purpose of constructing and maintaining a public charity hospital and directing the trustees to keep the funds well and securely invested and to use the income solely for the maintenance, support, sustaining, and operation of said hospital, and provided for the filling of vacancies in the board of trustees so that the bequests and devises shall never fail for the want of trustees, and authorizing the trustees to formulate their own rules and regulations.

Such other provisions of the will as may be necessary will be set out in subsequent statements.

On August 21, 1918, Ewing, Settegast, and Stewart appointed H. F. MacGregor, R. S. Sterling, G. A. Brandt, and W. A. Childress as the four other trustees with themselves to constitute the board of seven trustees provided for in the will, and delivered the entire estate to the board of seven trustees, and ceased to act as executors.

On October 19, 1918, Ewing, Settegast, and Stewart resigned as trustees.   The vacancies have been filled, and the board is now composed of H. F. MacGregor, R. S. Sterling, G. A. Brandt, W. A. Childress, T. P. Lee, J. M. Howe, and G. A. Taft.

On July 10, 1922, MacGregor, Sterling, Brandt, Childress, Lee, Howe, and Taft, as testamentary trustees in open court, suggested the death of the original plaintiff, George H. Hermann, and filed a written suggestion of such death, and asked leave to substitute themselves as plaintiffs, and the leave was granted, and on that date they filed plaintiffs' first amended original petition, substituting said seven trustees as plaintiffs, and alleging the same cause of action set forth in plaintiffs' original petition.

On the same day the defendant filed its first original answer, which, after stating the facts before set out as to the date of the death of the plaintiff Hermann, the probate of his will, and the appointment and qualification of the original executors, avers, in substance, that—

"Said executors, from the date of their appointment, more than seven years ago, never did appear, and never have appeared in this suit, nor have they suggested or caused to be suggested the death of George H. Hermann, or had the same entered of record in open court, nor have they ever asked that they be made plaintiffs so that the suit should proceed in their names; that said suit during all of said period of more than seven years remained wholly passive, with nothing of record evidencing an intention on the part of the executors to prosecute the same from the date of their qualification to the present time, a period of more than seven years, and that said Hermann died before verdict on October 21, 1914, and the abatement of the suit could have been prevented only by the appearance of his executors herein, and, upon a suggestion of George H. Hermann's death being entered of record, in open court, and being made plaintiffs in such suit so that the suit should proceed in their names, but said executors, although more than seven years have passed, have not appeared in this suit, have not suggested the death of George H. Hermann of record in open court, have not made themselves parties plaintiffs herein, and, as this defendant is advised, informed, and believes and so alleges the fact to be, there is no authority under the facts or in law for the revival or the prosecuting of this suit by MacGregor, Sterling, Brandt, Childress, Lee, Howe, and Taft, who by the pleading filed July 10, 1922, styled their first amended original petition, in lieu of the original petition filed by George H. Hermann July 16, 1909, seek, after the lapse of more than seven years, to substitute themselves as plaintiffs for the original plaintiff in their capacities as trustees under the will and of the estate of George H. Hermann, alleging that they compose the board of trustees of Hermann Hospital provided for in said will, and as constituting an entity known as Hermann Hospital Estate; wherefore, defendant pleads said matters in abatement and says this cause had been abandoned and discontinued as a matter of law, and that this court has lost jurisdiction of the subject-matter and of the parties, and that defendant has been released and discharged from any further attention thereto, and that the present plaintiffs are without any right to prosecute this suit. and prays the court to strike out said pleadings of plaintiffs and to sustain the pleas in abatement and dismiss the cause. This is sworn to."

Paragraph II of said first amended original answer is a general demurrer, paragraphs III, IV, V, and VI are called special exceptions, and paragraph VII is a general denial, and paragraph VIII is a plea of limitation, and paragraph IX is a special plea that the suit has been abandoned, discontinued, forfeited, and lost because of delay in suggesting the death of the original plaintiff and in substituting plaintiffs.

In reply to this answer, appellants filed a supplemental petition in which it is alleged that, having been appointed trustees in strict compliance with the will of George H. Hermann and duly qualified as such, appellants, who are now administering the estate under the terms of the will, are in effect executors of the will, and also occupy the position of devisees without necessity of further administration, and as such executors or devisees are entitled under the statute to be made plaintiffs and to prosecute this suit. This petition further alleges:

"That J. W. Lockett was attorney for the original plaintiff and remained so until the death of Hermann, and thereafter J. W. Lockett continued to be attorney for the executors and trustees named in the will, and upon the appointment of the board of seven trustees became and has since been and is now their attorney, and F. D. Minor is now and has been since the institution of this suit attorney for defendant; that plaintiffs have never for one moment abandoned, nor intended to abandon the prosecution of this suit, and have never failed to appear in court and give it the attention required; that the case has been many times set for trial and has been many times continued by agreement of counsel for plaintiff and defendant; that the cause has at all times remained on the docket of pending cases since its institution; that the plaintiff's original petition and defendants' answer have remained in the files of pending cases in the courtroom and are now there and have never been transferred to the files of disposed-of cases, and likewise the depositions taken have remained on file in the files for pending cases and have never been placed in those of disposed of cases, which are separate; that the judge of this court has called this case at every call of the docket since the suit was filed, and plaintiffs' counsel has appeared in court on the call of the docket every time it has been called during those years, and has responded to this case, and has either had it set for trial or continued, or else passed to be later set by agreement; that when the said J. W. Lockett appeared in this case prior to the death of George H. Hermann he appeared for him; that after his death he appeared and was acting for the independent executors and trustees named in the will, and, since the appointment of the seven trustees in all of his appearances in court and his correspondence and transactions he has represented the board of trustees; that through him the first-named executors and trustees and the present trustees have appeared in this case at each term of court and have never neglected or abandoned the same; that the said J. W. Lockett and F. D. Minor, acting for plaintiffs and defendant, respectively, had much correspondence in reference to this case before and after the death of George H. Hermann, and during each year since his death; that said F. D. Minor, as attorney for defendant, has frequently written to J. W. Lockett, and since the death of Hermann, requesting either the setting of the case or its postponement or continuance, and all of his requests have been complied with in the belief that the case was pending, and it has never been mentioned that the case has abated or been discontinued or abandoned until the filing of defendant's first-amended original answer of July 10, 1922; that F. D. Minor, who lives in Beaumont, has several times called on said J. W. Lockett in Houston, and since the death of George H. Hermann, and after the qualification of the first-named executors and trustees, and after the ap-

pointment of the present board of trustees, with knowledge thereof, and discussed the pendency of the case and requested that, when plaintiff's counsel should be ready to try it it be set far enough off for trial to allow defendant's counsel ample time for preparation for trial and to conform other engagements thereto, and that all postponements of the case and all failure to set the case at such terms of court when the case was not expressly set for trial have been with the consent or acquiescence of defendant's counsel; that in 1910 when the case was set for trial it was passed for settlement by agreement of counsel, and the case was never settled and no definite determination that it would not be settled, and there was no subsequent request of the defendant for the setting of the case; that at request of counsel for plaintiff the case was set for October 10, 1921, but was continued by agreement at the request of counsel for defendant; that long after the death of George H. Hermann and after the qualification of the first-named executors and trustees, and after the appointment of the seven trustees, there were negotiations between plaintiff's counsel and defendant's counsel for a compromise of the case, and an offer of compromise was made by each to the other, but no settlement reached and negotiations never terminated; that there is a similar case to this pending in another court, and defendant's counsel expressly requested plaintiff's counsel not to try the same until after the trial of this case, which request was made several years after the death of George H. Hermann; that this case has never in fact been dismissed from the docket, and the court has continuously treated it as pending from the date of its filing until now, and has numerous times called plaintiff's counsel to the court to answer to this case, and plaintiff's counsel has always answered thereto and at some terms had the case set for trial and at other terms explained why it was not necessary to set the case for trial, and at some terms the case was placed on the list of set cases without being marked on the court's docket, and at some terms the case was continued by merely erasing it from the typewritten list of set cases without making any entry on the docket; that the docket is composed of several books; that defendant, or its agent or attorney, has never applied to the clerk to issue a scire facias for the executors, administrator, devisee, or heir of George H. Hermann, deceased, or the trustee of his estate, requiring them to appear and prosecute this suit, and neither the executors, nor devisees, nor the heirs, nor trustees failed after service to enter their appearance or to prosecute this suit, and the defendant has never made any motion to have the suit dismissed, abated, or discontinued, and the same has never been dismissed, abated, or discontinued, but has been continuously on the court's docket, with frequent appearances therein by the original plaintiff and by the executors and trustees first named, and by the present trustees; that the defendant and its counsel have, at frequent intervals, agreed to postponements and continuances of the case and have appeared therein; that the defendant has now again appeared and asked leave to file its first amended original answer and obtained such leave and filed such answer to the merits of the case; that plaintiffs have a meri-

torious cause of action; that the defendant held in its pipe lines for the original plaintiff 6,372.61 barrels of oil which it transferred out without his authority and charged for him, and never paid nor accounted to him therefor, but defends on the ground that it transferred the same out on orders purporting to have been signed by him, but which he claims were forged and which plaintiffs still so claim, and, if this suit is abated, dismissed, or discontinued, or held to be not a pending suit, so as to stop limitation, the suit of plaintiffs would be barred by limitation if a new suit were instituted, and great injustice would thereby be done plaintiffs; that the delay in the trial of the case is as much attributable to defendant as to plaintiff and has in nowise injured the defendant."

On the hearing of the plea in abatement, in addition to the entries on the judge's docket before set out, appellants put in evidence later entries on this docket showing that the case was set for trial on October 3, 1921, was again set for trial on December 19, 1921, and was continued by agreement on December 13, 1921, and that on April 4, 1922, it was continued with agreement that it be set for trial at the June term, 1922.

J. W. Lockett testified that, after Ewing, Settegast, and Stewart resigned as trustees in October, 1918, they did not participate in the management of the Hermann estate; that he was Mr. Hermann's attorney when the suit was filed in 1909 and acted for him until his death, October 21, 1914, and then acted as attorney for Ewing, Settegast, and Stewart as executors and trustees until August 21, 1918, and since then has acted for the board of seven trustees; that whatever he did during these respective dates he was acting for the original plaintiff, or for Ewing, Settegast, and Stewart, or for the board of seven trustees—that is, for those who had charge of the estate at the time; that he has in person attended practically every call of the docket of this court from the time this suit was filed until this time; that this court has had a rule since before the death of George H. Hermann to not call the docket at each term, but to set for trial only such cases as counsel requested to be set; that so far as he knew the defendant had never requested the setting of the case; that "my recollection is that I have explained to the judge of this court a number of times between the date of the last setting which the docket shows before the qualification of the executors and the next setting after that which the docket shows, my reasons for not then setting the case; that the court has never directed or requested the case to be set except at such times as it has been set unless at some time when I gave some reason satisfactory why it should not be set; that on October 3, 1921, when I appeared in the case on a peremptory call thereof for setting for trial I was acting for the seven trustees now serving; that on December 13, 1921, when the case was con-

tinued generally by agreement of counsel, I was acting for the same seven trustees; that on April 4, 1922, when the case was continued generally with a statement to the court that it would be set for trial at the June term, 1922, I was acting for the seven trustees; that at my request the case was set for trial at the June term, 1922, and the request was made by me as attorney for the seven trustees; that I have made reports to Ewing, Settegast, and Stewart between January, 1915, and October, 1918, of the status and pendency of this case and that I have made similar reports to the seven trustees acting at different times between August, 1918, and this time; that I never, prior to July 10, 1922, in this case, suggested the death of George H. Hermann and requested the court to enter the fact upon the record, and to make his executors, trustees, representatives, or devisees parties plaintiff; that a week or ten days prior to the 10th day of July, 1922, I prepared what has been filed as plaintiffs' first-amended original petition, and mailed a copy of it to Mr. F. D. Minor, which he admits he received July 2, 1922; that the order entered on the docket July 10, 1922, is the first and only order noting the suggestion of the death of the original plaintiff and granting leave to make his representatives parties plaintiff; that at the time of Mr. Hermann's death there were several suits pending in which he was plaintiff and several in which he was defendant; that some of the cases were still pending when the executors first named appointed the trustees on August 21, 1918; that some suits were filed by the executors and trustees; that subsequent to the 21st day of August, 1918, the seven trustees were substituted as plaintiffs in at least one contested case in this court and judgment was rendered in their favor, being case No. 78934, styled Herman Executors v. Frank Hawkins and wife; that the probate proceedings introduced in evidence in this case are all of the proceeds of the probate on the estate of George H. Hermann, deceased; that neither Ewing, Settegast, nor Stewart, nor the seven trustees, ever suggested or requested me to not suggest the death of the original principal nor that they be not made parties, nor that there be any delay in proceeding, nor that anything be omitted to prosecute this suit to final judgment; that they never knew that there was a failure to suggest the death or to make them plaintiffs until about the 10th day of July, 1922; that there has been considerable correspondence between Mr. Minor and me in reference to this case, which is introduced in evidence; that in addition to these letters Mr. Minor and I have had a few conversations during the last three or four years, and, while I do not undertake to recall what either of us said, I think it is proper to say that there was at least a tacit understanding that whenever either of us desired a trial of this case he would let the other know about it

long enough in advance for both to get ready. So far as I recall, neither of us ever said anything to the other about whether or not new parties had been made. At the time of Mr. Hermann's death he owed debts. On August 21, 1918, his estate owed debts. So far as I know or believe such debts as were owing on August 21, 1918, have been paid by the seven trustees out of the funds of the estate prior to July 10, 1922; that from the time of Mr. Hermann's death until August 21, 1918, the three executors paid to Mrs. Martha Ewing $75 per month left to her by the will, and after August 21, 1918, the seven trustees have been paying the $75 per month and still are; that this case has remained on the docket of this court ever since it was filed in the name of George H. Hermann as plaintiff."

Upon this state of the pleadings and proof the trial court sustained defendant's plea in abatement and dismissed plaintiffs' suit.

The claim of defendant that plaintiffs had abandoned the prosecution of the suit was withdrawn by defendant's counsel before the trial court rendered its judgment, and that issue is eliminated from the case.

[1] The case presents but two questions for our determination, the first question being whether the death of the original plaintiff abated the suit without any action on the part of the defendant and put in motion the statute of limitation against the right of those authorized by the statute to make themselves parties and prosecute the suit in the name of the new plaintiff.

The statutes affecting the question are as follows:

R. S. art. 1886, reads:

"Where in any suit the plaintiff shall die before verdict if the cause of action be one which survives, the suit shall not abate by reason of such death, but the executor or administrator, and if there be no administration, and no necessity therefor, then the heir of such deceased plaintiff may appear, and, upon a suggestion of such death being entered of record, in open court, may be made plaintiff in such suit, and the suit shall proceed in his name."

R. S. art. 1887, reads:

"If, upon such death, no such appearance and suggestion be made at the first term of the court thereafter, it shall be the duty of the clerk, upon the application of the defendant, his agent or attorney, to issue a scire facias for the executor, administrator or heir of such decedent requiring him to appear and prosecute such suit; and if, after service of such scire facias as required in the case of citations, such executor, administrator or heir shall not enter his appearance on or before the appearance day of the succeeding term of the court, the defendant may, on motion, have the suit discontinued."

Article 1886, above quoted, expressly declared that a suit shall not abate by reason

of the death of the plaintiff, and the succeeding clause in this article, authorizing the executor, administrator, or heir to appear and, upon suggestion of the death of the plaintiff, to be made plaintiff and to prosecute the suit in the name of the new plaintiff, should not be construed as qualifying the express declaration that the death of the plaintiff shall not abate the suit. We think the next article (1887) which was a part of the same legislative act, clearly shows that it was not the intention of the lawmakers that the failure of the executor, administrator, or heir to appear voluntarily and be made plaintiff as provided in the statute would ipso facto cause a discontinuance or abatement of the suit. If such had been the legislative intent there would have been no reason for requiring the defendant, in order to have the suit discontinued, to first have the executor, administrator, or heir served with scire facias requiring him to appear and prosecute the suit.

[2-4] Our conclusion being that the suit did not abate upon the death of Hermann, nor by reason of the failure of the executors to make themselves plaintiffs, it follows that the statute of limitation of four years (article 5690, R. S.) cannot be invoked in bar of the right of those now entitled to become plaintiffs to prosecute the suit. The suit not having abated, its continuance on the docket has prevented the running of limitation against the cause of action therein asserted. Of course under some circumstances the long delay of those entitled to be made parties and continue the prosecution of the suit to appear and have themselves made parties should be considered an abandonment of the suit, and this would be true under some circumstances, notwithstanding there was no intention to abandon it. It may also be conceded that under some circumstances the failure of those entitled to prosecute the suit to do so within a reasonable time should charge them with such laches as would bar their right to proceed with the suit. Beck v. Avondino, 20 Tex. Civ. App. 330, 50 S. W. 207; Alexander v. Barfield, 6 Tex. 400. But, as before stated, the issue of abandonment is not in the case; that portion of the plea in abatement charging abandonment of the suit having been withdrawn by the appellee before judgment was rendered by the trial court. If the plea had not been withdrawn, the undisputed evidence would have required the trial court to find against such plea.

[5] Appellee, by its attorney, from time to time agreed with the attorney for appellants that the case should be continued, and there was a general agreement between the attorneys that neither party would have the case set for trial without giving the other party notice and sufficient time to prepare for the trial. These agreements were all made with the knowledge on the part of appellee's attorney that George Hermann was dead, and that the attorney for appellants in making these agreements was acting for appellants. Upon this state of facts it is, we think, clear that there was no abandonment of the suit, and it is equally clear that appellee is in no position to invoke the equitable doctrine of laches in bar of appellants' rights.

[6] This brings us to a consideration of the second question presented by the record, which is: Are appellants entitled, under the statutes before quoted, to be made plaintiffs in the suit and prosecute the cause of action for the benefit of the Hermann Hospital Estate? While the question is by no means free from doubt, our conclusion is that it should be answered in the affirmative.

Appellants are neither administrators nor heirs of George Hermann, nor are they in a technical sense the executors of his will, and if the statute be construed strictly in accordance with the technical meaning of the terms used it would not authorize appellants to become plaintiffs in the suit. We think this construction of the statute is too narrow and technical, and would, if adopted, in a large measure defeat the manifest purpose and intent of the statute when considered as a whole.

[7] The statute has two general purposes, the first being to abrogate the common-law rule that the death of the plaintiff abates a suit, and the second to provide for the substitution as plaintiff of any person or persons who succeeded to the rights of the original plaintiff in the cause of action asserted in the suit, and who takes plaintiff's estate charged with his debts and obligations, and we do not think the naming of executors, administrators, and heirs was intended, when no such named person existed, to exclude others who, though not technically within the classes named, bear the same relation to the estate of the deceased.

The appellants in this case, while not technically executors of Hermann's will, received their appointment under the will and by its terms are made the custodians of his entire estate and solely intrusted with its title, management, and administration, and in practical effect are executing the will and in that sense are his executors. There is no other person authorized to prosecute this suit, and, if they cannot do so, the suit must abate and the cause of action be lost to the beneficiary of the will. We cannot bring ourselves to believe that the Legislature intended the statute to be constructed so as to permit results of this kind to follow.

Our construction of this statute is in accord with that given by the Court of Civil Appeals for the Fourth District in the cases of Yarbrough v. Martin, 28 Tex. Civ. App. 276, 67 S. W. 177, and finds support in the case of Grayson v. Winnie, 13 Tex. 288. No case is cited holding directly to the contrary.

We are of opinion that the judgment of the trial court should be reversed and the cause remanded, and it is so ordered.

Reversed and remanded.